# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NICHOLAS GRYGA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19 C 1276 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| HENKELS & MCCOY GROUP, INC. and | ) |
| HENKELS & MCCOY, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

For the reasons explained below, defendants' motion to dismiss the amended complaint is granted in part and denied in part.

## BACKGROUND

Plaintiff, Nicholas Gryga, brought this suit against his former employer, Henkels & McCoy, Inc., as well as Henkels & McCoy Group, Inc., who defendants say is its parent company. Henkels & McCoy, Inc., to which the Court will refer as "H&M," is "a privately-owned engineering firm" that "builds, installs, designs and offers project management services to commercial and industrial corporations." (ECF No. 10, Am. Compl. ¶ 17.)

Gryga, who was a field director for H&M and generally responsible for project management, alleges that shortly after starting work there in 2015, he learned that a group of H&M executives were defrauding Spectra Energy, a publicly-traded company and one of H&M's largest clients, "on the AIM project, one of H&M's biggest construction projects." (*Id.* at 1, ¶¶ 18-19.) Gryga alleges that certain H&M employees participated in a scheme to inflate estimates for construction projects, negotiate contracts that were based on those inflated

estimates, and then submit invoices on such projects that falsely inflated the hours worked on the project and the amount of materials used. Furthermore, according to Gryga, "certain executives at Spectra were active participants in the fraud" and "accept[ed] kickbacks and other inappropriate perks from H&M executives in exchange for accepting inflated invoices." (*Id.* at 1, ¶ 27.) A third-party inspection company whose principal was the spouse of a Spectra executive "verified and approved" the work described in the false invoices. (*Id.* ¶ 40.) Gryga says that he reported the fraud to the H&M "division controller" and the "head of internal audit" but was told that he was being labeled a "whistleblower" and that he could have a long career in the company if he refrained from being a "troublemaker." (*Id.* ¶¶ 28-29.)

Thereafter, Gryga was instructed not to return to the job sites where he had discovered the fraud, and to leave the matter alone. He experienced a series of demotions and salary decreases. When other employees contacted Gryga to report continuing fraud with regard to Spectra, Gryga told them to contact the "fraud hotline" and copy senior management on the communications. (*Id.* ¶ 33.) Gryga was then told to stop giving such advice to those employees. In May 2016, H&M sent Gryga to Chicago to open a Midwest division; the move involved a substantial pay cut.

In February 2017, Gryga requested a meeting with his new division head to discuss the fraud and "abuses" by his supervisor. (*Id.* ¶ 43.) The day before Gryga was scheduled to fly to Houston for the meeting, the supervisor called him and told him to cancel the trip. The following day, Gryga's employment was terminated on the ground that Gryga had been engaged in a pattern of sexual harassment. Gryga says that this reason is "purely pretextual" and that just weeks prior, he had received an outstanding review and was identified as an "upcoming leader in the company at their annual corporate meeting." (*Id.* ¶¶ 45-46.) According to Gryga, "a day

before [he] could finally reveal the scheme to someone who might listen," his supervisor "cut him off at the knees by terminating him." (*Id.* ¶ 46.)

Gryga alleges that after he was fired, H&M hampered his efforts to find new employment by repeating to other companies and headhunters the "lie" that Gryga was fired for sexual harassment. (*Id.* ¶¶ 47-49.) The industry is "highly consolidated," and former H&M employees are in senior management roles at many leading companies. (*Id.* ¶ 51.) Gryga "was forced to take a job" for a non-unionized company, with a significant reduction in title and compensation. (*Id.* ¶ 52.) In early 2019, he applied with KS Energy Services for a position for which he was completely qualified. The human-resources representative there had previously worked at H&M, and she said that before making a decision she was going to reach out to H&M to discuss Gryga's work there. Gryga did not get the position and was not provided an explanation; he believes that H&M "again repeated the same untrue allegations of sexual misconduct and harassment." (*Id.* ¶ 55.)

On June 20, 2017, Gryga filed a whistleblower complaint against H&M with the United States Department of Labor (the "DOL"), pursuant to the Sarbanes-Oxley Act of 2002 (the "Act"), in which he alleged that H&M had engaged in fraud with respect to the AIM project and had wrongfully terminated his employment because he had reported construction fraud and a weakness of internal controls and had questioned fraudulent collusion by H&M and Spectra executives. (ECF No. 14-3.)[1] Three days later, the DOL dismissed the complaint on the grounds

---

[1]On a motion to dismiss, the Court may consider the allegations of the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice, without converting the motion into a motion for summary judgment. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The cited documents from the administrative proceedings (which are attached to defendants' supporting memorandum) are central to the complaint and referred to therein.

that H&M was not a covered entity under the Act and Gryga was not an employee within the meaning of the Act. (ECF No. 14-4.) Gryga objected to the DOL's findings and requested a hearing before an Administrative Law Judge. (ECF No. 14-5.) H&M moved to dismiss the matter. (ECF No. 14-6.) On December 11, 2017, the ALJ dismissed Gryga's administrative complaint on the same grounds cited by the DOL, and cancelled the scheduled hearing. (ECF No. 14-7.) On December 26, 2017, Gryga submitted a petition to the Administrative Review Board ("ARB") for review of the ALJ's decision. (Am. Compl. ¶ 13.) Within thirty days, the ARB accepted the petition and ordered briefing. (*Id.* ¶ 14.) The parties briefed the petition, and, as of April 10, 2019, the ARB had not issued a decision.[2] (*Id.* ¶ 15.)

In this action, Gryga brings a claim for violation of the Sarbanes-Oxley Act's anti-retaliation provisions as well as state-law claims for retaliatory discharge, defamation, and defamation per se. Defendants move under Federal Rule of Civil Procedure 12(b)(1) to dismiss the federal claim and under Federal Rule of Civil Procedure 12(b)(6) to dismiss the entire amended complaint.

## LEGAL STANDARDS

For purposes of a motion to dismiss under Rule 12(b)(1) or Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts therein, and draws all reasonable inferences in plaintiff's favor. *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017); *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, a complaint "must contain

---

[2]The Act permits whistleblowing employees to file a case in federal district court if the DOL has not issued a final decision within 180 days of the filing of a complaint; the ARB's determination constitutes the agency's final decision. 18 U.S.C. § 1514A(b)(1)(B); *Lawson v. FMR LLC*, 571 U.S. 429, 437 (2014).

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A Rule 12(b)(1) motion, in contrast, challenges federal jurisdiction, and the plaintiff bears the burden of establishing that the elements necessary for jurisdiction, including a ripe controversy, are met. *Scanlan v. Eisenberg*, 669 F.3d 838, 841-42 (7th Cir. 2012).

## DISCUSSION

### A. Sarbanes-Oxley Act

The Sarbanes-Oxley Act was enacted to "prevent and punish corporate and criminal fraud, protect the victims of such fraud, preserve evidence of such fraud, and hold wrongdoers accountable for their actions." *Lawson v. FMR LLC*, 571 U.S. 429, 434 (2014) (citation and internal quotation marks omitted). Gryga alleges that defendants violated a provision of the Act that protects whistleblowers as follows:

> No [publicly-traded] company . . . or any officer, employee, contractor, subcontractor, or agent of such company . . . , may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee--
> (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes [mail fraud, wire fraud, bank fraud, or securities fraud; violation of any rule or regulation of the Securities and Exchange Commission, or violation of federal law relating to fraud against shareholders], when the information or assistance is provided to or the investigation is conducted by--
> (A) a Federal regulatory or law enforcement agency;
> (B) any Member of Congress or any committee of Congress; or

5

>      (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); or
>
> (2) to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to [mail fraud, wire fraud, bank fraud, or securities fraud; violation of any rule or regulation of the Securities and Exchange Commission, or violation of federal law relating to fraud against shareholders].

18 U.S.C. § 1514A(a). In *Lawson*, the Supreme Court held that this provision shields not only those employed by the public company itself, but also employees of privately-held contractors and subcontractors who perform work for the public company. 571 U.S. at 433.

Despite *Lawson*'s holding, defendants argue that Gryga does not state a claim under the Act because neither defendant is a publicly-traded company, so neither qualifies as a "company" covered by the Act, nor does Gryga qualify as an "employee" under the Act. This argument is a nonstarter because the Supreme Court clearly held in *Lawson* that § 1514A extends whistleblower protection to employees of privately-held contractors who perform work for public companies. Defendants contend that *Lawson* is "inapposite" for two reasons. The first is that the defendants/former employers of the *Lawson* plaintiffs were privately-held companies that provided advisory and management services to a family of mutual funds. H&M says that mutual-fund companies typically have no employees of their own and require the services of privately-held companies to handle their day-to-day operations, so the decision was an effort to "avoid[] insulating the entire mutual fund industry," 571 U.S. at 450, from the reach of the Act, and no similar concern exists here. The Court, however, did not limit its holding in *Lawson* to the mutual-fund industry or any particular industry. Furthermore, the "limiting principles" that could possibly restrict the Act's coverage, which the Court discussed in *Lawson*, 571 U.S. at 453-54, do not apply here. H&M is alleged to have performed work for Spectra as a contractor

6

on a construction project that took place over a period of time, not in the context of a "fleeting business relationship" like a purchase of a box of rubber bands, *see id.* at 453. Moreover, the whistleblowing relates to H&M fulfilling its role as a contractor for the public company, Spectra, not in some other capacity.

Defendants also attempt to distinguish *Lawson* on the basis that the plaintiffs there reported fraud *by* the mutual-fund companies that directly implicated the funds' shareholders, whereas Gryga's allegations are that fraud was committed *against* the publicly-traded company. But Gryga alleges that executives at *both* H&M and Spectra participated in a scheme to defraud Spectra. In any event, defendants rely on a distinction without a difference. As in *Lawson*, the subject of plaintiff's alleged whistleblowing activity falls squarely within the types of conduct listed in § 1514A. Gryga alleges that he was demoted and then fired for having reported a fraudulent-billing scheme with respect to H&M's contract work on construction projects for Spectra. As Gryga points out, a company's shareholders can be equally harmed whether it is the contractor, or the company itself, that causes losses due to fraud. The Court is unpersuaded by defendants' citations to (1) the ALJ's view that the alleged fraud falls outside the protection of the Act because it is "two or three steps removed from potentially affecting a shareholder's investment," (ECF No. 14, Defs.' Mem. Supp. Mot. at 9 (citing ECF No. 14-7 at 8)), and (2) a district-court decision from outside this circuit, *Gibney v. Evolution Marketing Research, LLC*, 25 F. Supp. 3d 741, 747-48 (E.D. Pa. 2014), in which the court ruled that the Act was not intended to reach a scenario where there are allegations of fraudulent conduct between two companies that are parties to a contract, and one of those companies happens to be publicly-held. There is no support in the plain text of the statute, in *Lawson*, or in Seventh Circuit case law for such a narrowing of the reach of the Act. Furthermore, defendants provide no authority in

7

support of their assertions that Gryga fails to state a claim under the Act because he makes specific allegations as to only one Spectra employee who was allegedly involved in the fraud or because he does not specifically allege that he included in his reports to his superiors that Spectra was in on the fraud.

Defendants also maintain that the Court has no subject-matter jurisdiction over Gryga's claim under the Act because he has "revise[d] the nature of the fraud scheme in an attempt to get around" the ALJ's analysis,[3] (Defs.' Mem. Supp. Mot. at 9), and during the administrative proceedings he did not afford the DOL the opportunity to resolve his allegations that Spectra was a participant in the fraud. The Court disagrees. From the outset, plaintiff alleged that H&M and Spectra engaged in "collusion and fraudulent billing practices." (ECF No. 14-3 at 6.)

**B.     Retaliatory Discharge**

Gryga brings his claim for retaliatory discharge under Illinois law. "The Illinois Supreme Court has held that the tort of retaliatory discharge extends to cover whistleblowers fired because of their whistleblowing." *Hoskins v. Green*, No. 16 C 8479, 2019 WL 952129, at *6 (N.D. Ill. Feb. 26, 2019) (citing *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 879 (Ill. 1981)). To succeed on this claim, Gryga must show that he was discharged in retaliation for legally-protected activities in violation of a clear mandate of Illinois public policy. *See McCoy v. Maytag Corp.*, 495 F.3d 515, 520-21 (7th Cir. 2007) (citing, *inter alia*, *Hartlein v. Ill. Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992)). Defendants argue that Gryga cannot establish a violation

---

[3]Defendants appear to suggest that deference is due the ALJ's decision, but the Court's review is de novo. *See* 18 U.S.C. § 1514A(b)(1)(B) (providing a cause of action "for de novo review in the appropriate district court of the United States" when "the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant").

of Illinois public policy because, although Gryga himself was working for H&M in Illinois, the alleged fraud has no connection with Illinois: it "involves a Pennsylvania-based company incorporated under Pennsylvania law (H&M) overbilling a Texas-based company incorporated under Delaware law (Spectra) regarding a pipeline project in non-Illinois states." (Defs.' Mem. Supp. Mot. at 12.)

In *Palmateer*, the Illinois Supreme Court noted that public policy "concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." 421 N.E.2d at 878. The court further stated that "[t[here is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens" and that public policy "favors citizen crime-fighters." *Id.* at 879-80.

Gryga argues that the public policy of Illinois is implicated because the victims of the fraudulent conduct he reported would be Spectra's shareholders, at least some of whom are citizens of Illinois. Allegations of such a connection between Gryga's reporting and the protection of the property of Illinois citizens would suffice to satisfy the "public policy" element of alleging a retaliatory-discharge claim. *See, e.g.*, *Mackie v. Vaughan Chapter-Paralyzed Veterans of Am., Inc.*, 820 N.E.2d 1042, 1051 (Ill. App. Ct. 2004) (stating that "public policy favors the reporting of potentially illegal or improper conduct" and that "[b]ecause the citizen crime-fighter approach to retaliatory discharge favors Mackie's reporting what appeared to be criminal conduct, and what Mackie saw seemed to be the theft of the chapter's resources, Mackie's complaint satisfies the third prong of a cause of action for retaliatory discharge."). Gryga acknowledges, however, that his complaint does not include these allegations, and he

9

requests leave to amend if necessary. Accordingly, plaintiff's retaliatory discharge claim is dismissed without prejudice, with leave to replead to so allege.

**C.  Defamation**

Gryga's claims for defamation and defamation per se are based on his allegation that H&M falsely stated that his employment was terminated because he had engaged in sexual misconduct and sexual harassment. Defamation under Illinois law is either "per se" or "per quod." Defendants contend that Gryga fails to state a claim for defamation, no matter how the claim is styled.

Defamation per quod requires a plaintiff to show reputational harm from the statements. *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 612-13 (7th Cir. 2013). To state a claim for defamation per quod in federal court, Gryga must plead special damages in accordance with Illinois law and Federal Rule of Civil Procedure 9(g). *See Robinson v. Morgan Stanley*, No. 06 C 5158, 2008 WL 4874459, at *5 (N.D. Ill. June 18, 2008); Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."). Defendants assert that Gryga's allegations that he lost job opportunities are too vague and generalized. In response, Gryga points to his allegations that he did not get a job at KS Energy Services due to H&M's defamatory statements about him. These allegations suffice because they are more than just general allegations of lost economic and job opportunities; Gryga claims that he did not obtain a specific "lucrative" job with KS Energy Services, for which he was qualified and had a personal recommendation, and where he was interviewed by an individual who said that she planned to contact H&M. *See Pippen*, 734 F.3d at 614 ("it is enough to identify a concrete loss"); *Becker v. Zellner*, 684 N.E.2d 1378, 1387 (Ill. App. Ct. 1997) (allegations that defamatory statements caused or contributed to plaintiffs' loss of a particular prospective job opportunity were

10

sufficient to allege special damages). It may come to pass that Gryga will be unable to ultimately prove that it was defendants' actions that caused him not to obtain that job. But, as a matter of pleading, his allegations of special damages are enough to state a claim for defamation per quod.

Statements that are defamatory per se are considered so egregious that they are actionable without proof of injury. *Pippen*, 734 F.3d at 613. There are five categories of defamation per se under Illinois law, *id.*, none of which Gryga discusses. Only two are of interest here: (1) statements that suggest that the subject cannot perform his job because of lack of ability or want of integrity, and (2) statements that prejudice the subject in the pursuit of his trade or profession. *See id.* The difference between the two is subtle; the former seems to imply misfeasance in job performance, and the latter covers suitability for a trade or profession. *Id.* Statements that Gryga had engaged in sexual harassment relate to neither the ability to perform his job nor his suitability or fitness for it, so he fails to state a claim for defamation per se. *See also Castro v. Total Home Health, Inc.*, No. 03 C 8486, 2004 WL 1588261, at *4 (N.D. Ill. July 9, 2004) (sexual harassment allegations did not fit categories of defamation per se). Because there appears to be no possibility of successful amendment, that claim is dismissed with prejudice.

### D. Henkels & McCoy Group, Inc.

There is one final issue as to which defendants suggest Gryga's complaint is problematic. Defendants observe that Gryga has sued both H&M "and its parent company, Henkels & McCoy Group, Inc." and that although the amended complaint refers to both entities collectively throughout, Gryga alleges that H&M, not its parent company, was his employer. (Defs.' Mem. Supp. Mot. at 1 n.1.) The Court agrees with defendants that the basis for Gryga's claims against Henkels & McCoy Group, Inc. is unclear. In fact, Gryga does not state a claim against that

entity; the amended complaint varyingly refers to a single defendant (when referring to Gryga's employment and employer) and defendants, plural, but does not describe specific conduct of Henkels & McCoy Group, Inc. that would serve as a basis for any of Gryga's claims. Accordingly, Henkels & McCoy Group, Inc. is dismissed without prejudice and with leave to amend with respect to that entity to the extent plaintiff can do so consistent with Federal Rule of Civil Procedure 11.

## CONCLUSION

Defendants' motion to dismiss the complaint [13] is granted in part and denied in part. Plaintiff's claim for retaliatory discharge is dismissed without prejudice, and defendant Henkels & McCoy Group, Inc. is dismissed without prejudice, with leave to amend as to that claim and that defendant within 14 days of the date of this order. Plaintiff's claim for defamation per se is dismissed with prejudice. The remainder of defendants' motion is denied.

**DATE**: Aug 6, 2019

_____
**Ronald A. Guzmán**
**United States District Judge**